IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:19-cv-02604-DDD-NYW

NEIL HALL,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

## ORDER

This case for under-insured-motorist benefits is before the court on Defendant Allstate Fire and Casualty Insurance Company's motion for summary judgment (Doc. 25). For the following reasons, the court grants Allstate's motion.

## BACKGROUND

In assessing Allstate's motion for summary judgment, the court views "the facts and all reasonable inferences those facts support in the light most favorable" to Plaintiff Neil Hall. *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1189–90 (10th Cir. 2009). The court will grant Allstate summary judgment "if but only if the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law." An issue of material fact is genuine only if the nonmovant presents facts such that a reasonable factfinder could find in favor of the nonmovant." *S.E.C. v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (alteration adopted).

This case arises from an auto accident between Plaintiff Neil Hall and an under-insured motorist the parties identify by her last name, Ms. Johnson. Doc. 25 at p. 4, ¶ 1. Ms. Johnson was at fault. *Id.* at p. 4, ¶ 2.

At the time of the accident in October 2018, Mr. Hall had an Allstate auto-insurance policy. *Id.* at p. 4, ¶ 4. His Allstate policy capped under-insured motorist liability at $100,000 per motorist. *Id.* Ms. Johnson was insured by a different insurance company. *Id.* at p. 4, ¶ 3. Her liability limit was $25,000. *Id.* at p. 4, ¶ 5. Mr. Hall settled his claim with Ms. Johnson for that limit in April 2019. *Id.*

Around the same time, Mr. Hall's counsel contacted Allstate about additional benefits. *Id.* at p. 4, ¶ 5. Counsel wrote Allstate that "Mr. Hall suffered injuries and continues to suffer effects" from the accident with Ms. Johnson. Doc. 25-2 at 1. "To date," counsel continued, "we have obtained medical expenses in the amount $30,441.73, itemized as follows." *Id.* The itemized amounts listed in counsel's letter, however, totaled $27,619.18. *See id.* Counsel concluded that Mr. Hall "is continuing to receive medical care," that he would "continue to forward new records and bills as I receive them," and requested that Allstate "tender the benefits owed at this time." *Id.*

Allstate reviewed the medical bills attached to counsel's letter and determined that the reasonable amount of medical expenses incurred totaled $25,011.68. *Id.* at p. 5, ¶ 10. On May 6, 2019, Allstate paid Mr. Hall $11.68, which is the difference between its determination of the reasonable medical expenses incurred and the settlement amount. *Id.* at p. 5, ¶ 11.

On May 20, June 17, July 9, July 19, and August 14, 2019, Allstate attempted to contact counsel for Mr. Hall by phone and letter to discuss the status of Mr. Hall's medical treatment and bills. *Id.* at p. 5–6, ¶¶ 13–

16. Counsel for Mr. Hall responded to none of those communications. *Id.* Instead, Mr. Hall filed this suit. He alleges that Allstate failed to make a reasonable offer to him for his underinsured-motorist benefits and that Allstate's investigation into his injuries was incomplete. Doc. 1 at ¶¶ 107–08. Mr. Hall's complaint asserts three claims. First, he alleges that Allstate breached the insurance policy for failing to compensate him for the entirety of the damages he suffered as a result of the accident. *Id.* at ¶¶ 112–19. Second, he alleges that Allstate unreasonably delayed and denied payment of benefits in violation Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. *Id.* at ¶¶ 120–23. Third, he asserts a claim of insurance bad faith. *Id.* at ¶¶ 124–34.

Allstate now moves for summary judgment on Mr. Hall's claims. Doc. 25. It argues Mr. Hall's breach-of-contract claim fails because Mr. Hall failed to cooperate with Allstate's investigation, that Allstate could not have violated Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 or acted in bad faith because there is no evidence it acted unreasonably. Allstate also seeks attorneys' fees under Colo. Rev. Stat. §§ 10-3-1116(5) and 13-17-102.

## ANALYSIS

### I.   Breach of Contract

Mr. Hall's Allstate insurance policy contains a cooperation clause that says the "insured person [Mr. Hall] must cooperate with us in the investigation, settlement and defense of any claim or lawsuit." Doc. 25 at 10. The undisputed material facts establish that Mr. Hall failed to fulfill this duty when he refused to assist Allstate in the investigation of his claim for under-insured motorist benefits. Allstate is entitled to summary judgment on Mr. Hall's claim for breach of contract as a result.

Under Colorado law[1] an insured may forfeit the right to recover under an insurance policy if he or she fails to cooperate in violation of a policy provision. *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015); *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989). "The purpose of a cooperation clause is to protect the insurer in its defense of claims by obligating the insured not to take any action intentionally and deliberately that would have a substantial, adverse effect on the insurer's defense, settlement, or other handling of the claim." *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001). Even though the question whether an insured failed to cooperate generally is a fact question, if "the record can produce no other result" than non-cooperation, the insurer is entitled to judgment as a matter of law. *Hansen*, 779 P.2d at 1364.

That is the case here. The only conclusion to be drawn from the record before the court is that Mr. Hall failed to cooperate with Allstate. The underlying facts are essentially undisputed. After Mr. Hall sent his initial medical bills to Allstate in April 2019, Allstate attempted to follow up with him on numerous occasions to discern whether he had incurred additional medical expenses. Mr. Hall responded to none of those follow-up communications and did not supplement his medical records or bills. He instead filed this suit alleging Allstate's breach. But under the cooperation clause, there can be no breach unless Mr. Hall cooperated in Allstate's investigation of his claim. *See Walker v. State Farm Fire & Cas. Co.,* No. 16-CV-00118-PAB-STV, 2017 WL 1386341, at *6 (D. Colo. Feb. 23, 2017) (insured who promised to cooperate with claim investigation, but repeatedly refuse to answer questions from insurer and provide information relevant to insured's claim violated cooperation

---

[1] The parties agree that Colorado law governs their dispute.

- 4 -

clause) *report and recommendation adopted,* No. 16-CV-00118-PAB-STV, 2017 WL 1386346 (D. Colo. Mar. 17, 2017); *cf. Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989) (no violation of cooperation clause where "record [wa]s devoid of a single example of a request by [insurer] for assistance from [insured] which was refused").

But Mr. Hall's non-cooperation is not sufficient to entitle Allstate to summary judgment. The failure to cooperate is a breach of an insurance contract only if the insurer suffers a material and substantial disadvantage. *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001). An insured's non-cooperation disadvantages an insurer when it "prevents the insurer from completing such a reasonable investigation." *Walker*, 2017 WL 1386341, at *4 (quoting 1 Allan D. Windt, *Insurance Claims & Disputes* § 3.2 (6th ed. 2016)). An insurer is prejudiced, in other words, if it is "put in the untenable position of either denying coverage or paying the claim without the means to investigate its validity." *Id.*

That is what happened here. Had Mr. Hall complied with his obligation, he might have provided information that would have convinced Allstate to pay what he believes he is owed, or at least allowed it to investigate his claims further. Instead, he filed this suit. Mr. Hall's refusal to communicate with Allstate put Allstate in the position of paying the claim without first having had the opportunity to investigate it.

None of Mr. Hall's counterarguments are persuasive. He first contends that Allstate waived its right to raise his non-cooperation because it did not timely raise or reserve this defense. Doc. 26 at 8. It is true that "an insurer should raise (or at least reserve) all defenses within a reasonable time after learning of such defenses, or those defenses may be deemed waived or the insurer may be estopped from raising them."

*United States Fidelity & Guaranty v. Budget Rent-ACar Systems, Inc.*, 842 P.2d 208, 210 n. 3 (Colo. 1992). Here, Allstate raised its non-cooperation defense in its answer to Mr. Hall's complaint. Doc. 9 at p. 19. Because Mr. Hall did not inform Allstate that he believed it was in breach of the policy between them until he filed suit, Allstate's answer was the earliest practical time for Allstate to raise the issue. It did not waive the defense.

Mr. Hall next contends that Allstate has identified no provision of the policy that he breached. Doc. 26 a 9. This argument is perplexing. Allstate specifically identified the non-cooperation provision, Doc. 25 at 10, which the court agrees Mr. Hall violated as explained above. Mr. Hall does not explain how the cooperation clause is not the relevant contract provision for Allstate's motion.

Mr. Hall argues that Allstate has failed to show "it made a single request to Mr. Hall that he failed to comply with." *Id.* at 11. But that's not true. After Mr. Hall sent his initial medical bills to Allstate in April 2019, Allstate contacted him on May 20, June 17, July 9, July 19, and August 14, 2019, to see if he had supplemental expenses. Mr. Hall doesn't really dispute this conclusion, but instead argues that he did not possess the information (additional medical expenses, wage losses, and medical records) that Allstate requested. *Id.* at 12. Even assuming that to be true, the cooperation clause obligated Mr. Hall to, at least, tell Allstate he didn't yet have the information and would forward it to Allstate when he did.

Mr. Hall asserts that Allstate is required to show that he refused to cooperate in bad faith. *Id.* at 12–13. For this assertion he cites *Farmers Auto. Inter-Ins. Exch. v. Konugres*, 202 P.2d 959 (Colo. 1949). Doc. 26 at 12. There, the court explained, "what would appear at first blush to be

- 6 -

a breach of the co-operation clause may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." *Id.* at 963. But *Konugres* is inapposite. There was no mistake in this case: Mr. Hall and his agents simply ignored repeated attempts by Allstate to investigate his claims.

Mr. Hall last argues that Allstate wasn't prejudiced because Allstate had the means to investigate his claim. Doc. 26 at 14–15. He specifically points to Allstate's right to obtain medical and employment records under the policy as evidence of its dilatoriness. *Id.* But if Mr. Hall's duty of cooperation means anything, it at a minimum required him to respond to Allstate's multiple inquiries about his status and tell Allstate that it should proceed through the formal processes of request medical and employment-record authorizations. *See State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 189 (Colo. 2004) ("If both parties fulfill their reciprocal duties, virtually all relevant facts and issues likely to arise in . . . litigation will be known by both the insurance provider and its insured long before any suit is filed."). He says that "Allstate's inaction [was] the impetus" for his suit. *Id.* at 14. But Allstate did take action; it was Mr. Hall who did not.

Because Mr. Hall failed to cooperate with Allstate, Allstate is entitled to summary judgment on his claim for breach of contract.

## II.   Unreasonable Delay and Bad Faith

Summary judgment is also proper on Mr. Hall's claims for unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and 1116, and for common law bad faith. Under Colorado law, when an insurer properly denies coverage, the insured has no viable claim for unreasonable denial or bad faith. *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in

Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." (collecting cases)); *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-CV-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015) ("While [the insured] asserts that failure to cooperate is a defense to its breach of contract claim and not to its bad faith claim, this court agrees with [insurer] that in order to prevail on its statutory unreasonable delay/denial claim, [an insured] first has to prove entitlement to benefits."), *aff'd sub nom. Sable Cove Condo. Ass'n v. Owners Ins. Co.*, 668 F. App'x 847 (10th Cir. 2016). Because, as explained above, Allstate didn't breach its contract with Mr. Hall, judgment is proper on Mr. Hall's claims for unreasonable denial and bad faith.

### III.   Attorneys' Fees

Allstate seeks attorneys' fees under Colo. Rev. Stat. § 10-3-1116(5), which says, "if the court finds that an action brought pursuant to this section was frivolous as provided in article 17 of title 13, C.R.S., the court shall award costs and attorney fees to the defendant in the action." Colo. Rev. Stat. § 13-17-102(2) in turn says that a court "shall award . . . reasonable attorney fees" in applicable civil actions "that the court determines lacked substantial justification." As used in Section 13-17-102, "'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." *Id.* § 13-17-102(4). Claims made or maintained in bad faith and those that lack any support in rational argument meet this standard. *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1218 (10th Cir. 2010).

Allstate isn't entitled to attorneys' fees under Section 10-3-1116. Allstate says that Mr. Hall "purposefully with[e]ld documentation" from it,

- 8 -

but the record merely shows a lack of communication. The court agrees that Allstate is entitled judgment on Mr. Hall's claims. Indeed, that judgment is warranted on the ground that Mr. Hall didn't adequately cooperate with Allstate before filing suit. But without more, the court cannot say that Mr. Hall brought this suit in bad faith or that his arguments lacked any rational basis.

## CONCLUSION

Accordingly, it is **ORDERED** that Allstate's motion for summary judgment (Doc. 25) is **GRANTED**; and that its motion for attorneys' fees (Doc. 25) is **DENIED**. The clerk is directed to enter judgment in favor of Allstate and close the case.

DATED: January 12, 2021         BY THE COURT:

Hon. Daniel D. Domenico